FILED

2024 Apr-25  PM 02:50
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| **ANGELA ALVERSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **4:23-cv-00533-LSC** |
| **MARTIN O'MALLEY,** ) | |
| **Acting Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OF OPINION**

## I.   Introduction

On September 20, 2023, Angela Alverson ("Alverson" or "Plaintiff") filed with the Clerk of this Court a complaint against the Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). (Doc. 10.) Plaintiff appeals the Commissioner's decision denying her claim for a period of disability and disability insurance benefits ("DIB"). (Doc. 11.) Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Background

Plaintiff attended college and previously worked as a postmaster. (Tr. at 58, 204.) Beginning August 18, 2020, Plaintiff alleged she was disabled due to a major depressive disorder, unspecified anxiety disorder, panic attacks, hypertension, and idiopathic hypersomnia. (Tr. at 203.) She was forty-nine years old at the onset of her alleged disability. (Tr. at 199.) On August 19, 2021, Plaintiff submitted her application for a period of disability and DIB. (Tr. at 11.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for a period of disability and DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the claimant's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of

impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id*. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial evidence in the record" adequately supported the finding that the claimant was not disabled).

Similarly, the third step requires the evaluator to consider whether the claimant's impairment or combination of impairments meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the claimant has the RFC to perform the requirements of her past relevant work ("PRW"). *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent her from

performing her PRW, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Id*. at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the evaluator will find her not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first established that Plaintiff has not engaged in SGA since her alleged disability onset date, August 18, 2020. (Tr. at 14.) Next, the ALJ found that Plaintiff's generalized anxiety disorder, major depressive disorder, and agoraphobia with panic attacks qualified as "severe impairments," while Plaintiff's hypertension, idiopathic hypersomnia, sleep apnea, and obesity qualified as "non-severe impairments." (*Id*.) However, the ALJ found that these impairments neither met nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) Specifically, Plaintiff's impairments failed to meet the level of severity in broad areas of functioning outlined in Paragraph B. (Tr. at 15.) Plaintiff had only moderate limitations in (1) understanding, remembering, or applying

information, (2) interacting with others, (3) ability to concentrate, persist or maintain pace, and (4) ability to adapt or manage herself. (Tr. at 15.) Following this determination, the ALJ established that Plaintiff has the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember, and carry out simple instructions; can maintain attention and concentration for 2-hour periods at a time; can adapt to infrequent and routine workplace changes; can make simple work related decisions; can perform jobs that do not require interaction with the general public as part of the job duties; can have occasional interaction with supervisors; can have frequent interaction with coworkers; can perform jobs that do not require professional or commercial driving; and can perform jobs that do not have a specific production requirement.

(Tr. at 16.)

Relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff is unable to perform any of her past relevant work. (Tr. at 21.) However, the ALJ stated, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including laundry laborer, kitchen helper, and cook helper. (Tr. at 22.) From these findings, the ALJ concluded the five-step evaluation process by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 18, 2020," Plaintiff's original alleged disability onset date, "through the date of this decision."

(Tr. at 23.)

### III.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*,

383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982), *superseded on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022)).

## IV.    Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ did not accord proper weight to the opinion of Dr. Gregory T. Ciaccio ("Dr. Ciaccio"), as Plaintiff's treating psychiatrist, and failed to show good cause for not doing so, and (2) the Appeals Council failed to consider new evidence that Plaintiff submitted and erred in denying Plaintiff's request for review. (Doc. 10 at 7, 8, 14.)

**A. Weight Given by the ALJ to the Opinion of Dr. Gregory T. Ciaccio**

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested with Alverson, as the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving she had a severe impairment, she thus had the

burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical… findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities…"); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Under this new regulatory scheme, the ALJ is not required to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion. 20 C.F.R. § 404.1520c.

Instead, the ALJ should focus on the persuasiveness of medical opinions by assessing the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors in evaluating medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, she is not required to do the same for the other factors. *Id.* In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In the Plaintiff's reply, she alleges that the ALJ did not discuss the (1) persuasiveness of each medical opinion, (2) mention explicitly the consistency amongst the psychiatric providers, or (3) expand on the supportability of Dr. Ciaccio's notes. (Doc. 14 at 2-3.)

To Plaintiff's first point, the ALJ is not required to discuss every piece of evidence, so long as the decision is not a "broad rejection" that would prevent the court from finding that the ALJ considered the claimant's medical condition "as a whole." *Truesdell v. Comm'r of Soc. Sec.*, No. 20-13416, 2022 WL 401548 (11th Cir. Feb. 10, 2022). Accordingly, the ALJ explained that she considered Dr. Ciaccio's opinion in the Medical Source Statement of Ability to do Work-Related Activities (Mental) form ("Form HA-1152-U3") to be unpersuasive "because it is contradicted by the doctor's own treatment notes that reflect generally moderate symptoms amenable to medication management." (Tr. at 20.)

However, the ALJ found "somewhat persuasive the opinions of the non-examining State agency consultants" because these opinions were "generally consistent with and supported by the weight of the evidence." (Tr. at 20.) The State agency consultants, in reaching their decision, considered extensive medical evidence from Marshall Medical Center, Chest Medicine of Cullman, Medical Centers Behavioral, Premier Family Care, Dr. Melba Flowers Crawford of North

Alabama Counseling Center, and Mountain Lakes Behavioral. (Tr. at 20.) The ALJ's decision explicitly considered evidence from the aforementioned medical providers, with the exception of Mountain Lakes Behavioral, who destroyed Plaintiff's medical chart after seven years of no services, in accordance with their company's policy. (Tr. at 17, 19, 511, 514.) Since the ALJ expressly afforded deference to the opinions of the State agency consultants and provided reasons for her decision, the ALJ satisfied the requirement of stating the weight and reasoning given to different medical opinions with particularity. *See Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387 (11th Cir. May 11, 2022).

To Plaintiff's second and third point, Dr. Ciaccio's notes on Form HA-1152-U3 were inconsistent with his progress notes and the overall record. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144 (11th Cir. Jan. 10, 2022) (holding that substantial evidence supported the ALJ's findings that the treating physician's opinion was "inconsistent with the overall record and unpersuasive," finding that the treating doctor's own treatment notes, the medical record evidence from other providers, and claimant's activities of daily living, supported the ALJ's findings).

Dr. Ciaccio, the treating psychiatrist whose opinion Plaintiff argues should have been given more weight, completed Form HA-1152-U3 for Plaintiff on October

17, 2022. (Tr. at 609.) Dr. Ciaccio noted various "marked"[1] limitations in the following areas of work activities: "Understand and remember complex instructions;" "Carry out complex instructions;" and "The ability to make judgments on complex work-related decisions." (Tr. at 610.) Moreover, Dr. Ciaccio noted "marked" limitations in the Plaintiff's ability to "interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting." (Tr. at 611.) Dr. Ciaccio wrote that these limitations were all "related to diagnoses of major depressive disorder and unspecified anxiety disorder." (Tr. at 610-11.)

This assessment is inconsistent with and unsupported by Dr. Ciaccio's own records on Plaintiff's condition. From September 2020 to January 2023, Dr. Ciaccio consistently reported that the Plaintiff's insight and judgment were "fair to good," and her attention and concentration were "intact," despite her depressed/anxious mood. (Tr. at 31, 34, 37, 462, 464, 468, 471, 474, 477, 479, 483, 486, 489, 492, 495, 498, 501 569, 572, 575, 578, 581, 584, 587, 590, 593, 596, 599.) Regarding the Plaintiff's activities of daily living, Dr. Ciaccio previously noted that Plaintiff occasionally went hunting and cared for her pets and grandchild. (Tr. at 467, 469,

---

[1] "Marked" is defined as "[t]here is a serious limitation in this area. There is a substantial loss in the ability to effectively function." (Tr. at 610.)

472, 490, 570, 573.) The newly submitted records from Dr. Ciaccio also indicated that, although reduced, the Plaintiff was "doing ok" in regard to her activities and she spent some time with family. (Tr. at 29, 32, 35.) Consistently, Dr. Ciaccio's treatment recommendations for the Plaintiff included medication management and supportive therapy. (Tr. at 19, 31, 34, 37, 466, 474, 477, 480, 483, 486, 489, 492, 495, 498, 501, 569, 573, 575, 578, 581, 584, 587, 593, 596, 599.)

Moreover, Dr. Ciaccio's assessment on Form HA-1152-U3 is inconsistent with the overall record. *See* 20 C.F.R. § 404.1520c(c)(2) (2017). The ALJ pointed to various medical records indicating that Plaintiff could return to work: Jess Youngblood's, MD, report that the Plaintiff "could only work eight hours per day in a workplace free from harassment;" Marshall Medical Center's assessment that the Plaintiff was stable; and Melba Crawford's, LICSW, report that Plaintiff could benefit from vocational rehabilitation services. (Tr. at 18, 19, 20.) In summary, the ALJ clarifies that the evidence demonstrates that Plaintiff "could work 8 hours a day not to exceed 40 hours weekly, if the environment was free from harassment and retaliation." (Tr. at 20.)

Based on this evidence, the ALJ could properly find that Dr. Ciaccio's assessment of Plaintiff's limitations are inconsistent with the medical record and

unsupported by medical evidence. As a result, the ALJ did not err in the weight given to Dr. Ciaccio's opinion.

### B. Appeals Council Review

With few exceptions, a claimant may present new evidence at each stage of the administrative process, including to the Appeals Council. *See* 20 C.F.R. §§ 404.900(b), 416.1400(b). However, the Appeals Council will consider additional evidence only if the Plaintiff demonstrates good cause for not submitting the evidence or informing the Commissioner. 20 C.F.R. § 404.970(b). The additional evidence must be "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a); *see also* 81 FR 90987 (explaining the new rules are effective January 17, 2017).

Further, the Commissioner's internal policy provides guidance on the meaning of "material" and chronological relevance and what it means for the Appeals Council to determine there is not a reasonable probability that the additional evidence would change the outcome of the decision. Hearings, Appeals, and Litigation Law Manual ("HALLEX"), § I-3-3-6, 1993 WL 643129 (May 1, 2017). The HALLEX explains that additional evidence is "material" if it is "relevant, i.e., involves or is directly related to issues adjudicated by the ALJ." *Id*. It explains that

additional evidence "relates to the period on or before the date of the hearing decision" (i.e., is chronologically relevant), "if the evidence is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *Id*. The HALLEX also explains that the Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id.* Nonetheless, the Appeals Council has discretion to deny review of the ALJ's decision. *See* 20 C.F.R. §§ 404.967, 416.1467.

The ALJ issued her decision on December 20, 2022. (Tr. at 23.) Alverson subsequently submitted three pieces of evidence to the Appeals Council: (1) correspondence from the United States Postal Service dated October 20, 2020, through January 19, 2022; (2) psychiatric records and a medical source statement from Dr. Ciaccio dated November 19, 2021, through October 12, 2022; and (3) medical records from Dr. Ciaccio dated October 18, 2022, through January 19, 2023. (Tr. at 2.) The Appeals Council denied Plaintiff's request for review based on a determination that the first two pieces of evidence were copies of Exhibits 12F, 13F, and 15F, therefore failing to constitute new evidence. (Tr. at 2.) Although the third piece of evidence was newly submitted, this new evidence did not show "a

reasonable probability that it would change the outcome of the decision." (Tr. at 2.)

Plaintiff challenges this determination, claiming that the Appeals Council applied the wrong standard of review in considering whether the new evidence would change the outcome. (Doc. 10 at 11, 13.) Plaintiff asserts that the proper standard is whether there is a reasonable *possibility* that the new evidence would change the result, rather than a reasonable *probability* of a different outcome due to the new evidence. (Doc. 10 at 11, 13.) Plaintiff cites *Hyde v. Bowen*, concluding that "evidence is 'material' in that there is a reasonable possibility that the new evidence would change the administrative outcome." 823 F.2d 456, 459 (11th Cir. 1987).

Under the new regulatory scheme enacted in 2017, the Appeals Council will review a case when it "receives additional evidence…, and there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5), 416.1470(a)(5) (emphasis added); *see also Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90,987-01 (Dec. 16, 2016). In addition, the Eleventh Circuit has on at least one occasion used the terms "possibility" and "probability" interchangeably when articulating the standard, suggesting that the

difference between the meaning of the two terms in this context is not so great to produce a different result. *See Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1321-22 (11th Cir. 2015).

Along with this challenge, Plaintiff suggests that the Appeals Council's denial of review was conclusory for failing to provide a material basis for affirming the decision. (Doc. 10 at 14.) However, Eleventh Circuit precedent demonstrates that the Appeals Council was not required to provide a more detailed explanation of its reason for denying review. *See Mitchell v. Comm'r, Soc. Sec. Admin*., 771 F.3d 780, 784 (11th Cir. 2014); *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). Accordingly, the Appeals Council properly concluded that the new evidence did not establish a reasonable probability of a different outcome. (Tr. at 2.)

The newly submitted, additional evidence consists of three records. (Tr. at 29-37.) First, on October 18, 2022, Plaintiff presented to Marshall Medical Centers for a follow-up psychiatric progress visit with Dr. Ciaccio. (Tr. at 29.) At this appointment, Plaintiff stated she had no energy, terrible concentration, and suicidal ideations, specifically not caring if she died. (Tr. at 29.) The record also indicates that Plaintiff had a "depressed/anxious" mood. (Tr. at 30.) Still, Dr. Ciaccio

noted that the Plaintiff's insight and judgment were "fair to good," and her attention and concentration were "intact." (Tr. at 30.)

Second, on December 2, 2022, Plaintiff returned to Marshall Medical Centers for a follow-up psychiatric progress visit with Dr. Ciaccio. (Tr. at 32.) At this appointment, Plaintiff reiterated her previous symptoms: low energy, awful concentration, and suicidal ideations, and a depressed/anxious mood. (Tr. at 32, 34.) Once again, Dr. Ciaccio noted that the Plaintiff's insight and judgment were "fair to good," and her attention and concentration were "intact." (Tr. at 32.) This follow-up examination revealed that the Plaintiff was in much the same condition as on the date of her previous exam in October. (Tr. at 30, 34.)

Third, on January 19, 2023, Plaintiff returned to Marshall Medical Centers for a follow-up psychiatric progress visit with Dr. Ciaccio. (Tr. at 35.) Although the Plaintiff restated her symptoms of low energy and terrible concentration, she denied suicidal ideations. (*Id*.) Moreover, Plaintiff reported heightened anxiety and panic attacks, an increase in weight, and a depressed/anxious mood. (Tr. at 35, 37.) Still, Dr. Ciaccio noted that the Plaintiff's insight and judgment were "fair to good," and her attention and concentration were "intact." (Tr. at 37.) This follow-up examination revealed that the Plaintiff was in much the same condition as on the date of her previous exam in December. (Tr. at 34, 37.) The only change in Dr.

Ciaccio's assessment was to begin taking two milligrams of Abilify daily. (Tr. at 37.) However, Plaintiff's pharmaceutical records indicate that Dr. Ciaccio previously instructed Plaintiff to take five milligrams of Abilify in September and November of 2020. (Tr. at 285.)

This evidence, when considered with the whole record, does not create a reasonable probability that the ALJ would change her decision. The record examined by the ALJ already demonstrated a history of generalized anxiety disorder, major depressive disorder, agoraphobia with panic attacks, sleep apnea, and obesity. (Tr. at 14.) Moreover, Plaintiff regularly received normal mental examination findings in most, if not all, categories listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, despite her consistent depressed/anxious mood. (Tr. at 31, 34, 37, 462, 464, 468, 471, 474, 477, 479, 483, 486, 489, 492, 495, 498, 501 569, 572, 575, 578, 581, 584, 587, 590, 593, 596, 599.) These normal findings were repeatedly reiterated in the newly submitted records. (Tr. at 30, 32, 37.)

Therefore, it is unlikely that the submitted records would change the ALJ's decision, especially considering the information that was already considered in the record before her.

**V.    Conclusion**

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on April 25, 2024.

L. Scott Coogler
United States District Judge

215708